```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Gregory Huard

    v.                                          Civil No. 10-cv-144-JL
                                                  Opinion No. 2011 DNH 022

Town of Allenstown,
Shaun Mulholland, and
Michael Stark

## MEMORANDUM ORDER

This case involves a police officer's claim that he was wrongfully terminated in retaliation for reporting misconduct by fellow officers. Plaintiff Gregory Huard brought suit against his former employer, the Town of Allenstown, and his former supervisors, Shaun Mulholland and Michael Stark, asserting a claim under 42 U.S.C. § 1983 for violations of his constitutional rights to free speech, petition of the government, and due process, see U.S. Const. amends. I and XIV, a parallel claim under the New Hampshire Constitution, see N.H. Const. pt. 1, arts. 15, 22, and 32, and state common-law claims for wrongful termination and defamation. This court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction).

The defendants have moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), on each of Huard's common-law claims. After hearing oral argument, this court grants the motions in part and denies them in part. Huard has made sufficient

allegations to proceed with discovery on his claim for wrongful termination against the town, but not his claim for defamation against the two supervisors.

## I. Applicable legal standard

A motion for judgment on the pleadings under Rule 12(c) is evaluated under essentially the same standard as a Rule 12(b)(6) motion for failure to state a claim.  See, e.g., Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).  To survive such a motion, the "complaint must plead facts that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In determining whether the complaint meets that standard, the court must construe the complaint's allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor. Id.; see also Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  The following statement of facts conforms to those requirements.

## II. Background

Huard began working for the Town of Allenstown as a police officer in 2001, achieving the rank of sergeant in 2003.  He received favorable performance reviews through 2007, the last of

them from defendant Mulholland, who had recently become the town's police chief.  Around that time, Chief Mulholland began making sweeping changes to the police department.  He implemented new disciplinary procedures, approved by the town's Board of Selectmen, under which officers could no longer appeal minor disciplinary actions to the Board (previously, all disciplinary actions had been appealable), and three such actions against a single officer could result in termination.  He also made a number of personnel changes, resulting in heavy turnover among the department's officers.

One of the personnel changes involved Huard, who agreed to step down as sergeant and take the lower-ranking position of master patrolman.  Huard alleges that, before that demotion, Chief Mulholland "demeaned [him] and undermined [his] rapport with the newer officers under their command" and then used that lack of rapport as a basis for deeming him unfit to be sergeant.  After the demotion, Mulholland and defendant Stark (who had been hired to replace Huard as sergeant, and was later promoted to lieutenant) subjected Huard to a series of minor disciplinary actions.  Although they were unjustified, Huard had no ability to appeal the disciplinary actions under Chief Mulholland's new procedures.  Hoping to maintain a good working environment, Huard endured the discipline without protest.

In January 2008, Huard reported to Stark an incident involving "severe" misconduct by a fellow officer (not specifically described in the complaint). But Stark viewed it as "nothing more than a disagreement between officers." So Huard took his complaint up the chain of command to then-lieutenant Paul Paquette. Paquette responded, however, by assigning Stark to investigate it. In the end, the other officer received no disciplinary action; Huard, though, was reprimanded for allegedly making a personal call on his cell phone during work hours, which he claims was demonstrably untrue. Huard expressed concerns to Chief Mulholland about this outcome, but to no avail. Rather than address Huard's concerns, Mulholland began to "act vindictively" toward him, as did Stark.

Huard was disciplined further in February and April 2008 for failing to stamp "fax" on an internal document and for other behavior wrongly deemed "inappropriate." Finally, in November 2008, Chief Mulholland suspended Huard for the manner in which he responded to an emergency call relating to "shots fired and an open door to a residence." Again, Stark was assigned to investigate Huard, and he recommended in December 2008 that Huard be terminated. Mulholland agreed and implemented termination proceedings. Huard requested a hearing before the Board of Selectmen, see N.H. Rev. Stat. § 41:48 (providing that a police officer may be "removed for cause by [town] selectmen, after

notice and hearing"), scheduled for February 2009 at the town offices.

Before the hearing, Huard observed a number of irregularities that led him to conclude that it would be merely a "rubber stamp" of Mulholland's decision: First, Huard's name and contact information had been removed from the town's public website. Second, Mulholland had told the Board of Selectmen during a regular public meeting that none of the town's officers had more than five years of experience, when Huard had seven. Third, the hearing was moved at the last minute to the police department. Fourth, after arriving for the hearing, Huard and his wife noticed that his name had been removed from the department's organizational chart, dated January 2009 and posted on a bulletin board "in plain view in the semi-public portion of the police department."

As the hearing began, the police department's attorney objected to the presence of Huard's wife (who, Huard claims, was there "to offer solace and support"). Then, rather than summarize the charges and evidence against Huard and give him an opportunity to respond, the attorney called Huard as the first witness and "conduct[ed] unrestricted questioning of him." Huard objected to that procedure as "inquisitional, not fair and participatory," but the Board of Selectmen overruled his objection. Concluding that the Board had already decided to

terminate him and that anything he said at the hearing would be futile, Huard tendered his resignation.

Huard brought suit against the town, Chief Mulholland, and Lt. Stark in New Hampshire Superior Court in November 2009, alleging:

- wrongful termination against the town (count 1);[1]

- violations of his federal and state constitutional rights to free speech and due process against all defendants (count 2), see U.S. Const. amend. I and XIV (enforceable under 42 U.S.C. § 1983); N.H. Const. pt. 1, art. 15, 22, and 32;

- intentional infliction of emotional distress against Mulholland and Stark (count 3), which Huard has since voluntarily withdrawn;

- negligence against Mulholland and Stark (count 4), which Huard has also voluntarily withdrawn; and

- defamation against Mulholland and Stark (count 5).

The defendants removed the case to this court in light of the federal constitutional claims. See 28 U.S.C. § 1441(b). They then moved for judgment on the pleadings on Huard's state-law claims for wrongful termination and defamation. See Fed. R. Civ. P. 12(c).[2] This court will analyze each claim in turn.

---

[1]Huard also asserted claims for "constructive termination" and "employer liability," but has since conceded that those claims may be "folded into" his wrongful termination claim. See document no. 14-1, at 2.

[2]After Huard addressed his constitutional claims in his objection to the Rule 12(c) motion, the defendants argued in their replies that this court should grant them judgment on those claims as well. "Ordinarily," however, "this court does not consider theories advanced for the first time in reply,"

### III. Analysis

#### A. *Wrongful termination* (count 1)

First, the town argues that Huard has not alleged sufficient facts to support a claim for wrongful termination under New Hampshire law. "To succeed on such a claim, a plaintiff must prove: (1) that the termination of employment was motivated by bad faith, retaliation or malice; and (2) that [he] was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006). A plaintiff need not prove that he was expressly fired; the "termination" can also be "a constructive discharge, which occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." Id. at 248-49. Constructive discharge requires more than just "minor abuse of an employee; rather, the adverse working conditions must generally be ongoing, repetitive, pervasive, and severe." Id. at 249.

Huard admits that he resigned from his job at the police department, rather than being expressly fired. Nevertheless, he claims that he was constructively discharged in retaliation for

---

especially where the theories relate to claims not even challenged by the original motion. Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 303 n.16 (D.N.H. 2008). So Huard's constitutional claims will not be considered at this time.

reporting misconduct by fellow officers. The town argues that Huard's "complaint is devoid of any facts which would support an inference" of constructive discharge. As recounted in Part II, supra, however, Huard alleges that his supervisors "demeaned [him] and undermined [his] rapport" with other officers, repeatedly disciplined him without justification, and treated him "vindictively" after he complained. He further alleges that the town had already decided to fire him by the time of his resignation and taken steps consistent with that decision. Construed in the light most favorable to Huard, those allegations support an inference that his working conditions were so difficult and intolerable that a reasonable person in his position would have felt forced to resign.

This case is similar, in some respects, to Karch v. BayBank FSB, 147 N.H. 525, 536 (2002), where an employee brought a wrongful termination claim based on allegations that, like Huard, "she was disciplined and threatened with termination because of [a] private telephone conversation" and then "continually harassed" by her supervisor after she requested "an explanation and apology." Id. at 536. The New Hampshire Supreme Court affirmed the trial court's denial of a motion to dismiss the claim, rejecting the employer's argument that the employee had not sufficiently alleged a constructive discharge. "Assuming the truth of [the complaint's] allegations and construing all

8

reasonable inferences therefrom in favor of the plaintiff," the court concluded that the claim was "reasonably susceptible of a construction that would permit recovery." Id. The same is true of Huard's claim against the town.

Also instructive is Lacasse, 154 N.H. at at 247. There, an employee brought a wrongful termination claim based on allegations that her supervisor yelled at her twice, treated her "gruffly" for two days, and then gave her a critical review. The Supreme Court reversed the trial court's grant of summary judgment to the employer, concluding that it was a jury question whether the employee had been constructively discharged. Noting the supervisor's earlier statement that "if she comes across anything she dislikes about [an employee], she makes it miserable enough for them to quit," the court explained that a jury could find that "a reasonable person in the plaintiff's position would conclude that [the supervisor] was trying to drive her out, and that the relatively short period of mistreatment was only the beginning of a campaign of abuse that would continue until she quit." Id. Here, Huard alleges that the "campaign" to "drive [him] out" was even further along--indeed, that it was coming to a close--by the time he resigned.

In light of those New Hampshire Supreme Court cases and others, see, e.g., Porter v. City of Manchester, 151 N.H. 30, 42 (2004) (upholding jury verdict in favor of employee who alleged

9

constructive discharge based on a series of threatening comments and conduct by his supervisor), Huard's wrongful termination claim cannot be resolved as a matter of law on the pleadings. This ruling is without prejudice, however, to reconsidering the constructive discharge issue in the context of a motion for summary judgment, see Fed. R. Civ. P. 56, after the parties have an opportunity to develop the factual record.

**B.   *Defamation*** (count 5)

The defendants also argue that Huard has not alleged sufficient facts to support a claim for defamation under New Hampshire law.  "A plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication."  Pierson v. Hubbard, 147 N.H. 760, 763 (2002) (citing Restatement (Second) of Torts § 558 (1997)); see also Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007).  Huard alleges that the defendants, knowing he had been suspended and was awaiting a hearing before the Board of Selectmen, falsely suggested to the public that he had already been terminated, including by removing his name from the town's website and from the organizational chart posted at the police department, and

also by stating at a public hearing that the town had no officers with Huard's level of seniority.[3]

The defendants argue that those statements cannot reasonably be construed to have a defamatory meaning and that, even if they could, Huard has not identified any person who construed them that way, or even noticed them (except for his wife, who knew his true employment status). The latter point, while accurate, is not a proper basis for dismissal under New Hampshire law. See Thomson v. Cash, 119 N.H. 371, 374 (1979) ("Although in some jurisdictions pleadings in defamation are insufficient unless they specify the person or persons to whom the defamatory language was communicated, we think this is properly an issue for trial and that the absence of any such identification in the pleadings is not grounds for dismissing the action."). Huard has sufficiently alleged, albeit without naming a specific person, that the defendants' statements were communicated to third parties.

This court agrees with the defendants, however, that none of the statements can reasonably be construed to have a defamatory

---

[3]There is some tension between Huard's defamation claim, which alleges that it was false to suggest he had been discharged, and his wrongful termination claim, which alleges that he had indeed been discharged (albeit constructively). But a party is allowed to "state as many separate claims . . . as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3), so that tension is not a basis for judgment on the pleadings.

11

meaning.  "Whether a communication is capable of bearing a defamatory meaning is an issue of law [for] the court."  Thomas, 155 N.H. at 337.  Courts have generally held that "the mere statement of discharge from employment does not constitute" defamation, unless "the publication contains an insinuation that the discharge was for some misconduct."  Davis v. Ross, 754 F.2d 80, 84 (2d Cir. 1985) (citing Nichols v. Item Publishers, Inc., 132 N.E.2d 860, 862 (N.Y. 1956)); see also, e.g., BPSS, Inc. v. Wilhold, No. 08-1063, 2009 WL 736693, at *4, (E.D. Mo. Mar. 18, 2009); Picard v. Brennan, 307 A.2d 833, 835-36 (Me. 1973).  There was no such insinuation here.  Indeed, there was not even an express statement that Huard had been discharged (as opposed to having been suspended, which he was, or having resigned, which he later did).

　　　As the defendants note, if the mere removal of an employee's name from an organizational chart (or the like) could give rise to liability for defamation, then employers would have to provide an explanation for every such removal, or else stop publishing organizational charts altogether, in order to avoid liability.  Huard has not made any attempt to defend that impractical result (his objection contains only a conclusory paragraph on the defamation claim), nor is this court prepared to accept it, in light of the case law just cited.  See also, e.g., 2 Rodney A. Smolla, Law of Defamation § 15:16, at 15-24 (2d ed. 2010) ("When

the employer does not say anything negative" about the employee, "beyond the sort of vague and neutral type of statement" that the employee has been terminated, "the defamation count should be dismissed."). Huard's defamation claim must therefore be rejected on the pleadings.

**IV.  Conclusion**

For the reasons set forth above, the defendants' motions for judgment on the pleadings[4] are GRANTED as to Huard's claim for defamation (count 5), but DENIED as to his claim for wrongful termination (count 1), as well as his constitutional claims (count 2), which the defendants did not challenge until their reply briefs.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 8, 2011

cc:  Darrin R. Brown, Esq.
     Donald L. Smith, ESq.
     Brian J.S. Cullen, Esq.

---

[4]Documents no. 9 and 10.